**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

JAMES E. TURNER, JR., )
)
Plaintiff, )
)
vs. )
)
DANIA S. FERNANDEZ & )
ASSOCIATES, P.A. )
)
Defendant. )
______________________________ )

**COMPLAINT**

Plaintiff, JAMES E. TURNER, JR., files his complaint against Defendant, DANIA S. FERNANDEZ & ASSOCIATES, P.A., and states as follows:

**JURISDICTION & VENUE**

1. This is an action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et. seq.

2. Jurisdiction in this case is based upon 15 U.S.C. § 1692k which grants the United States District Courts jurisdiction to hear this action without regard to the amount in controversy.

3. Venue in the United States District Court for the Southern District of Florida is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in Miami-Dade County, Florida.

**PARTIES**

4. The Plaintiff, James E. Turner, Jr., owns a property located at 27401 SW 139 Place, Homestead, FL 33032.

5. Mr. Turner's property is used primarily for personal, family, or household purposes, to wit, it is his primary residence.

6. Mr. Turner has used his property as his primary residence since he purchased that residence in July of 2006.

7. Mr. Turner is required to pay assessments to Mandarin Lakes Neighborhood Homeowners' Association, Inc. ("Mandarin Lakes") as an incident of ownership of his property.

8. Mr. Turner is a consumer as defined in 15 U.S.C. § 1692a(3).

9. The Defendant, Dania S. Fernandez & Associates, P.A., is a law firm with a principal place of business of 13500 SW 88 Street, Suite 265, Miami, FL 33186.

10. Dania S. Fernandez is actively involved in business in Miami-Dade County, Florida.

11. Dania S. Fernandez was retained by Mandarin Lakes to collect past due assessments allegedly owed to it by Mr. Turner.

12. Dania S. Fernandez regularly represents associations in the collection of past due assessments.

13. Dania S. Fernandez regularly uses instrumentalities of interstate commerce including the mail in its collections activities.

14. On April 19, 2016, Dania S. Fernandez filed a complaint on behalf of Mandarin Lakes against Mr. Turner seeking to collect monetary amounts alleged to be owed to Mandarin Lakes. ("Mandarin Complaint").

15. Dania S. Fernandez is a debt collector as defined in 15 U.S.C. § 1692a(6).

**COUNT I – FDCPA VIOLATIONS**

16. Mr. Turner re-alleges and incorporates paragraphs 1 through 15 by reference herein.

17. Attached as **Exhibit A** is a copy of the Mandarin Complaint.

18. Miami-Dade Administrative Order No. 04-05 requires that County Court cases should be filed in the County Court district that corresponds with a specific zip code.

19. The Mandarin Complaint should have been filed in the South District of the Miami-Dade County Court based on the location of the subject property.

20. Dania S. Fernandez improperly filed the Mandarin Complaint in the Central District of the Miami-Dade County Court.

21. Dania S. Fernandez uses boilerplate documents.

22. Dania S. Fernandez's employees routinely assume all information in the boilerplate documents is correct and automatically signs those documents without fully verifying the information set forth in those documents.

23. Dania S. Fernandez failed to verify the accuracy of the amounts set forth in Mandarin Lakes' accounting records prior to filing a lawsuit against Mr. Turner.

24. Dania S. Fernandez failed to verify Mandarin Lakes' legal right to collect the amounts set forth in its accounting records prior to filing a lawsuit against Mr. Turner.

25. Dania S. Fernandez failed to properly review a title search prior to filing a lawsuit against Mr. Turner.

26. Dania S. Fernandez failed to properly review the federal bankruptcy court records prior to filing a lawsuit against Mr. Turner.

27. Paragraph 27 of the Mandarin Complaint states:

> Defendant, OWNER, has failed to pay assessments in the amount of $12,552.49 as of December 14, 2015, which includes accrued interest, costs, late charges and attorney's fees incident to the collection of the delinquent assessments. . . .

28. The December 14, 2015, claim of lien attached as an Exhibit C to the Mandarin Complaint states:

**Total Amount Due: <u>$10,683.77</u>** **Attorney's Fees Due: <u>$1,868.72</u>**

29. The amount due as set forth in the complaint and claim of lien is materially incorrect because it significantly overstates the amount owed, if anything, to Mandarin Lakes.

30. Attached as **Exhibit B** is a February 13, 2017, ledger from Mandarin Lakes showing, at least according to Mandarin Lakes' accounting records, that Mr. Turner only owed $1,483.33 in past due assessments to Mandarin Lakes as of December 1, 2015.

31. The Mandarin Complaint further shows that Dania S. Fernandez relied upon pre-lien and pre-lawsuit notices which were materially incorrect and were not in compliance with Florida law.

32. Florida law requires that an owner be provided a notice of the total amount due and an opportunity to pay that amount forty-five (45) days prior to an association recording a claim of lien against an owner's property.

33. Florida law requires that an owner be provided a notice of the total amount due and an opportunity to pay that amount forty-five (45) days prior to an association initiating a lien foreclosure lawsuit against an owner's property.

34. Dania S. Fernandez, by failing to send notices which accurately stated the total amount due, failed to provide the statutorily required notices prior to filing the Mandarin Complaint.

35. The December 14, 2015, claim of lien further failed to state the "assessment amount due, and the due date" as required by § 720.3085, Fla. Stat.

36. The Claim of Lien falsely states that Mandarin Lakes' legal authority to file and foreclose a claim of lien is derived from § 718.116, Fla. Stat. and the Declaration of Condominium.

37. Paragraph 22 of the Complaint states that "Plaintiff is entitled to foreclose its Claim of Lien for condominium assessments."

38. Mandarin Lakes is not a condominium association.

39. Mandarin Lakes has no authority to act pursuant to Chapter 718.

40. Mandarin Lakes is not owed any condominium assessments.

41. Mandarin Lakes is a homeowner's association formed under and subject to Chapter 720, Florida Statutes.

42. Dania S. Fernandez had actual knowledge of accounting irregularities prior to the filing date of the Mandarin Complaint.

43. Dania S. Fernandez was contacted by other owners who alleged similar accounting discrepancies prior to the filing date of the Mandarin Complaint.

44. Dania S. Fernandez also knew that there were accounting irregularities because it amended a September 9, 2015, claim of lien to reflect a

different total amount due allegedly owed to Mandarin Lakes by Mr. Turner prior to the filing of the Mandarin Complaint.

45. The Mandarin Complaint contains confusing and conflicting language regarding the method and procedure that Mr. Turner is required to utilize to seek verification of the debt.

46. Paragraph 11 of the Mandarin Complaint states:

> Unless the Defendant, Owner, or Tenant, within forty five (45) days after service of this Complaint, disputes the validity of the debt alleged herein, or any portion thereof, the debt will be assumed to be valid by Plaintiff or its counsel. If Defendant OWNER or TENANT(S) notifies Plaintiff or its counsel in writing forty five (45) days after service hereof, that the debt alleged herein or any portion is disputed, Plaintiff or its counsel will obtain verification of the debt and a copy of such verification will be mailed to the party giving notification to Plaintiff or its counsel.

47. Paragraph 24 of the Mandarin Complaint states:

> The provisions of the Fair debt Collection Practices Act require that Defendant be given the following notice: Unless the Defendant, Owner, or Tenants, within thirty (30) days after service of this Complaint, disputes the validity of the debt alleged herein, or any portion thereof, the debt will be assumed to be valid by Plaintiff or its counsel in writing thirty (30) days after service hereof, that the debt alleges herein or any portion thereof is disputed, Plaintiff or its counsel will obtain verification of the debt and a copy of such verification will be mailed to the party giving notification to Plaintiff or its counsel.

48. Paragraph 29 of the Mandarin Complaint states:

> Unless the Defendant, Owner, or Tenants, within forty five (45) days after service of this Complaint, disputes the validity of the debt alleged herein, or any portion thereof, the debt will be assumed to be valid by Plaintiff, or its counsel in writing thirty (30) days after service hereof, that the debt alleged herein or any portion thereof is disputed, Plaintiff, or its counsel will obtain verification of the debt and a copy of such verification will be mailed to the party giving notification to Plaintiff, or its counsel.

49. The least sophisticated consumer would not know whether he or she has thirty (30) days versus forty-five (45) days to submit a request for verification of the debt.

50. The least sophisticated consumer would not know whether he or she is required to send a written request for verification of the debt.

51. The Mandarin Complaint also grants to the other defendants, including any third-party tenant, the right to request verification of the debt allegedly owed by Mr. Turner.

52. The Mandarin Complaint does not claim or allege that these other defendants, including any third-party tenant, are liable for any alleged debt owed by Mr. Turner to Mandarin Lakes.

53. Dania S. Fernandez has filed numerous liens and lawsuits against consumers seeking to recover amounts greatly in excess of the amount actually owed to its association clients.

54. Dania S. Fernandez, either intentionally or negligently, has created a situation whereby consumers are effectively precluded from resolving their accounts prior to the initiation of litigation and prior to Dania S. Fernandez incurring many thousands of dollars of attorney's fees.

55. Dania S. Fernandez then contends that it is entitled to recover all attorney's fees incurred by the association client even if it is determined that the amounts set forth in the statutorily required pre-lien and pre-lawsuit notices are materially incorrect.

56. Dania S. Fernandez's failure to utilize reasonable procedures to prevent FDCPA violations prior to the initiation of a lawsuit, and its failure to correct known mistakes prior to the initiation of the lawsuit, is creating direct financial harm to consumers while, at the same time, providing a direct financial benefit to Dania S. Fernandez.

57. Dania S. Fernandez is seeking, on behalf of its association client, to recover approximately $26,000 in attorney's fees from Mr. Turner.

58. Dania S. Fernandez is not entitled to charge, recover, or seek to collect attorney's fees which are the direct result of its violations of the FDCPA.

59. Mr. Turner has also suffered emotional distress, anxiety, and stress as a result of Dania S. Fernandez's violations of the FDCPA.

60. The debt at issue relates to Mr. Turner's primary residence.

61. Mr. Turner filed bankruptcy and renegotiated his mortgage to save his primary residence from foreclosure.

62. A reasonable consumer who is in fear of losing their primary residence understandably suffers emotional distress, anxiety, and stress.

63. Mr. Turner has suffered emotional distress, anxiety, and stress resulting from the fear of losing his primary residence.

64. Mr. Turner seeks statutory damages pursuant to 15 U.S.C. § 1692k.

65. Mr. Forte seeks recovery of attorney's fees and costs pursuant to 15 U.S.C. § 1692k.

## FDCPA VIOLATIONS

66. Dania S. Fernandez violated 15 U.S.C. § 1692e(2)(A) by making a false representation as to the character, amount, or legal status of the debt in the Mandarin Complaint when it:

(a) materially misrepresented the amount of the debt, if any, owed to Mandarin Lakes.

(b) applied Mr. Turner's payment to his Mandarin Lakes' account in a manner contrary to Florida law or did not account for all of Mr. Turner's payments.

(c) alleged or asserted that Mr. Turner owed condominium assessments or that it had authority to collect the debt pursuant to Chapter 718.

(d) sought to collects amounts discharged in bankruptcy.

(e) failed to provide disclosure of the due dates of the past due assessments in the claim of lien which was attached as an Exhibit to the Complaint.

67. Dania S. Fernandez violated 15 U.S.C. § 1692e(5) by threatening to take action that it could not legally take or that is not intended to be taken when it:

(a) advised a third-party, the other defendants or tenants, that they could obtain verification of the debt allegedly owed by Mr. Turner from Dania S. Fernandez.

68. Dania S. Fernandez violated 15 U.S.C. § 1692e(8) by communicating or threatening to communicate to any person credit information which is known or should be known to be false when it:

(a) advised a third-party, the other defendants or tenants, that they could obtain verification of the debt allegedly owed by Mr. Turner from Dania S. Fernandez.

(b) misrepresented the amount of the debt to a third-party, the other defendants or tenants, in the lawsuit.

69. Dania S. Fernandez violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect debt when it:

(a) sent to Mr. Turner a pre-lien / pre-foreclosure notice which significantly overstated the amount of the debt and rendered it impossible for Mr. Turner to pay the amount actually owed to Mandarin Lakes, if any, prior to filing of a lawsuit.

(b) sought to communicate with third-parties by providing those third-parties a right to request verification of the debt allegedly owed by Mr. Turner.

(c) included language in the Mandarin Complaint that was confusing and conflicting as to Mr. Turner's right to request verification of the debt.

70. Dania S. Fernandez also violated 15 U.S.C. §1692f(1) by seeking to collect amounts, including unreasonable attorney's fees, which Mr. Turner had no legal obligation to pay or which were incurred as a direct result of Dania S. Fernandez's unlawful conduct.

WHEREFORE, Plaintiff, James E. Turner, Jr., respectfully requests that judgment be entered against the Defendant, Dania S. Fernandez & Associates, P.A., for the following:

A. Actual damages.

B. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A).

C. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).

D. For such other relief as may be just and proper.

**Dated:** April 18, 2017.

Respectfully Submitted,

s/ Michael T. Ross
Michael T. Ross, Esq.
FBN 91623
Law Office of Michael T. Ross, P.A.
5555 Hollywood Blvd. #303
Hollywood, Florida 33021
Phone: (786) 558-0281
E-mail: michael@flc-law.com

# IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

MANDARIN LAKES NEIGHBORHOOD HOMEOWNERS'ASSOCIATION, INC,
Plaintiff,

Case No.:
Div.:

vs.

JAMES E. TURNER, JR; et al.,
Defendant(s).
_______________________________________/

## COMPLAINT FOR DAMAGES AND TO FORECLOSE STATUTORY CLAIM OF LIEN

**COMES NOW**, the Plaintiff, **MANDARIN LAKES NEIGHBORHOOD HOMEOWNERS' ASSOCIATION, INC**. (hereinafter "ASSOCIATION") a Florida not-for-profit corporation, by and through its undersigned counsel, files this Complaint for Foreclosure against the Defendant(s), **JAMES E. TURNER, JR; UNKNOWN SPOUSE OF JAMES E. TURNER, JR.; JOHN DOE; JANE DOE;** and **ANY UNKNOWN TENANTS**, said Defendants, to foreclose the Lien that is more thoroughly described below, and in support for its claims for affirmative relief, alleges the following:

## JURISDICTION AND VENUE

1. This is an action for damages and to foreclose a lien for unpaid assessments in an amount less than $15,000.00, exclusive of interest, costs and attorney's fees, within the subject matter jurisdiction of this court.

2. Plaintiff, ASSOCIATION, is and at all times relevant was, a not-for-profit corporation organized and existing under the laws of the State of Florida and a Homeowner Association as defined by Florida Statutes section 720.303 responsible for the operation of MANDARIN LAKES NEIGHBORHOOD.

3. Defendants are, and at all times relevant were, residents of Miami-Dade County, Florida.

4. This action involves real property located in Miami-Dade County, Florida.



EXHIBIT A

## GENERAL ALLEGATIONS

5. Defendant **JAMES E. TURNER, JR** ("OWNER"), is the fee simple owner of the following described real estate:

   Lot 10, Block 88, of MANDARIN LAKES, according to the Plat thereof, as recorded in Plat Book 163, at Page 40, of the Public Records of Miami-Dade County, Florida.

   Property Address: 27401 SW 139 Place, Homestead, FL 33032.

   Folio Number: 30-6934-021-6610.

6. Pursuant to Chapter 720, Florida Statutes, Plaintiff, ASSOCIATION, is empowered to make and collect assessments for common expenses against the individual parcels of the MANDARIN LAKES NEIGHBORHOOD.

7. Plaintiff, ASSOCIATION, has made assessments for common expenses against Defendant, OWNER'S property.

8. The Claim of Lien is based upon unpaid maintenance assessments levied against the Defendant, OWNER.

9. Defendant, OWNER, failed to pay the Plaintiff for common expenses including maintenance, assessments, late fees imposed upon delinquent maintenance fees, regular and special assessments, pre-judgment interest, pre-litigation costs expended and reasonable pre-litigation attorney's fees incurred and any such additional amounts that may accrue subsequent to that date including litigation costs expended and reasonable litigation attorney's fees incurred in this action.

10. Moreover, the pertinent portion of the Declaration of Covenants, Conditions, and Restrictions of the ASSOCIATION expressly provides that the ASSOCIATION'S Claim of Lien secures all assessments, interest, costs, late charges and attorney's fees. A true and correct copy of the pertinent portion of the Declaration of Covenants, Conditions, and Restrictions of the ASSOCIATION is attached hereto and expressly made a part hereof as **Exhibit "A"**.

11. The provisions of the Fair Debt Collection Practices Act require that Defendant(s) be given the following notice:

    > Unless the Defendant, Owner, or Tenant, within forty five (45) days after service of this Complaint, disputes the validity of the debt alleged herein, or any portion thereof, the debt will be assumed to be valid by Plaintiff or its counsel. If the Defendant OWNER or TENANT(S) notifies Plaintiff or its counsel in writing forty five (45) days after service hereof, that the debt alleged herein or any portion thereof is disputed, Plaintiff or its counsel

will obtain verification of the debt and a copy of such verification will be mailed to the party giving notification to Plaintiff or its counsel.

12. Plaintiff, ASSOCIATION, by and through its attorney, sent Defendant, OWNER, by certified mail, return receipt requested, a forty five (45) day notice of intent to foreclose its Claim of Lien to Defendant, OWNER'S last known address. A true and correct copy of the 45-day notice of intent to foreclose Claim of Lien is attached hereto and expressly made a part hereof as **Exhibit "B"**.

13. JAMES E. TURNER, JR is an Individual and sui juris.

14. Defendant, JOHN DOE, has or may claim some interest in and to the subject property by virtue of being a tenant pursuant to a lease agreement, either oral or written. Any such interest would be subordinate, inferior and subject to the lien interest of the Plaintiff.

15. Defendant, JANE DOE, has or may claim some interest in and to the subject property by virtue of being a tenant pursuant to a lease agreement, either oral or written. Any such interest would be subordinate, inferior and subject to the lien interest of the Plaintiff.

16. Defendants, ANY UNKNOWN TENANTS, have or may claim some interest in and to the subject property by virtue of being a tenant pursuant to a lease agreement, either oral or written. Any such interest would be subordinate, inferior and subject to the lien interest of the Plaintiff.

17. The Plaintiff has satisfied all conditions precedent to the commencement of proceedings to foreclose upon its statutory claim of lien or such conditions have been satisfied, waived or excused.

## COUNT I- FORECLOSE CLAIM OF LIEN

Plaintiff, reaffirms and re-alleges paragraphs 1 through 17 as if fully set forth herein and further alleges as follows:

18. This is an action at law for damages and to foreclose upon a Statutory Claim of Lien arising under Florida Statute §720 located and situated in Miami-Dade County, Florida that is within the jurisdiction of this Court, exclusive of court costs, pre-judgment interest, and reasonably attorney's fees.

19. As a result of Defendant OWNER'S failure to pay the assessments due, Plaintiff, pursuant to Florida Statute Section 720.3085, recorded a Claim of Lien against the subject property.

20. Defendant, OWNER, became contractually and statutorily obligated to pay the proportionate share of the common expenses, including but not limited to maintenance fees, late fees imposed upon delinquent maintenance fees, regular and special assessments and all other authorized costs and fees allocated to the above described unit.

21. The Plaintiff filed a Claim of Lien against Defendant(s), and subject real property on December 14, 2015, and recorded the statutory claim of lien in Official Records Book 29887, at Page 3278, of the Public Records of Miami-Dade County, Florida, and is attached hereto and expressly made a part hereof as **Exhibit "C"**.

22. The delinquent amounts due and payable by Defendant, OWNER, shall accrue interest at the statutory rate of 18% per annum.

23. Defendant, OWNER'S homeowner assessment is delinquent and Plaintiff is entitled to foreclose its Claim of Lien for condominium assessments.

24. The provisions of the Fair debt Collection Practices Act require that Defendant be given the following notice: Unless the Defendant, Owner, or Tenants, within thirty (30) days after service of this Complaint, disputes the validity of the debt alleged herein, or any portion thereof, the debt will be assumed to be valid by Plaintiff or its counsel in writing thirty (30) days after service hereof, that the debt alleges herein or any portion thereof is disputed, Plaintiff or its counsel will obtain verification of the debt and a copy of such verification will be mailed to the party giving notification to Plaintiff or its counsel.

**WHEREFORE,** the Plaintiff, ASSOCIATION, moves this Honorable Court for any and all of the following relief:

A. Take jurisdiction of this cause and of the parties to this action.

B. Ascertain the amount of money including assessments, interest, expenses and costs, late charges and attorney's fees which Plaintiff is entitled to recover in this action.

C. That Plaintiff be decreed to have a lien upon the real estate of Defendant, OWNER, as described herein for the sum of money found to be due and that said lien is decreed to be superior to the rights, title and interest of Defendant.

D. That such lien be foreclosed in accordance with Section 720.3085, Florida Statutes, and the established rules and practices of the Court, that upon default for the payment to Plaintiff of the amounts so found to be due, that said real estate be sold by Clerk of Court to satisfy Plaintiff's lien in accordance with the provisions of Section 720.3085, Florida Statutes; and that a deficiency judgment be entered for the sum remaining unpaid against the Defendant, OWNER.

E. The entry of an order foreclosing and forever barring the enforcement of any inferior or subordinate interest in or lien upon the subject property held by Defendant, OWNER, or any other party claiming an interest in the real property encumbered by the Plaintiff's statutory claim of lien.

F. That the Final judgment of Foreclosure incorporate an order dispossessing Defendant(s), and requiring that the purchaser at the foreclosure sale, his representatives or assigns, be let into possession of the property.

G. Award such other relief this Court may deem just, necessary and proper.

**COUNT II- DAMAGES**

Plaintiff reaffirms and re-alleges paragraphs 1 through 24 as if fully set forth herein and further alleges as follows:

25. This is an action for damages against Defendant, OWNER, to recover delinquent assessments, interest, cost, late charges and attorney's fees.

26. Pursuant to Florida Statute Section 720.3085(a), Plaintiff is entitled to recover all unpaid assessments, plus interest, costs, late charges and attorney's fees incident to the collection of the delinquent assessments which have accrued at the time of rendition of judgment against JAMES E. TURNER, JR'S property.

27. Defendant, OWNER, has failed to pay assessments in the amount of $12,552.49 as of December 14, 2015, which includes accrued interest, costs, late charges and attorney's fees incident to the collection of the delinquent assessments. Additional assessments, interest, costs, late charges and attorney's fees have accrued from that date. Any partial payments shall be applied to amounts owed.

28. Florida Statute Section 720.301 provides in pertinent part that each unit owner shall be governed by and shall comply with the provisions of Florida Statute Chapter 720 may be brought by the Association and the prevailing party is entitled to recover a reasonable attorney's fee.

29. The provisions of the Fair debt Collection Practices Act require that Defendant(s) be given the following notice:

> Unless the Defendant, Owner, or Tenants, within forty five (45) days after service of this Complaint, disputes the validity of the debt alleged herein, or any portion thereof, the debt will be assumed to be valid by Plaintiff, or its counsel in writing thirty (30) days after service hereof, that the debt alleged herein or any portion thereof is disputed, Plaintiff, or its counsel will obtain verification of the debt and a copy of such verification will be mailed to the party giving notification to Plaintiff, or its counsel.

**WHEREFORE,** the Plaintiff, ASSOCIATION, moves this Honorable Court for any and all of the following relief:

A. The institution of an accounting under the direction of the Court to determine and affix the amount due and payable to the Plaintiff, for principal, interest, costs, charges and expenses, including reasonable attorney's fees, title searches and advancements

upon which the Court may award the Plaintiff, ASSOCIATION, and that the Court shall find the Defendant, OWNER, to pay the Plaintiff.

B. Award Plaintiff judgment against Defendant, OWNER, in the amount of all delinquent assessments and interest found to be due.

C. Award to Plaintiff, and against Defendant, OWNER, the costs, late charges and reasonable attorney's fees incurred incident to collection of the delinquent assessments.

Dated on this 19 day of April, 2016.

Respectfully Submitted,

**DANIA S. FERNANDEZ & ASSOCIATES, P.A.**
Attorneys for Plaintiff
10205 S. Dixie Highway, Ste. 204
Miami, Fl 33156
Telephone: (305) 254-4492
Facsimile: (305) 254-4514

Address of Electronic Service: Pleadings@dsfpa.com

By: ______________________
**Dania S. Fernandez, Esq.**
Fla. Bar No.: 493783
Dania@dsfpa.com
**Meliz M. Martin, Esq**
Fla. Bar No.: 106487
mmartin@dsfpa.com
**Vladimir E. Larios, Esq**
Fla. Bar No.: 105310
vlarios@dsfpa.com

This law firm is a "debt collector" under the Fair Debt Collection Practices Act. We are attempting to collect a debt, and any information obtained will be used for that purpose.

Regulations, it being understood that any suspension for either non-payment of any assessment or breach of any Rules and Regulations of the Association shall not constitute a waiver or discharge of the Member's obligation to pay the assessment; provided, however, that the Association shall not suspend the right to use any roads belonging to the Association, subject, however, to the Rules and Regulations of the Association for such use, and provided further that the Association may not suspend any rights and easements reserved herein to the Declarant. All suspensions of rights hereunder shall be performed by the Association in accordance with its By-Laws;

C. The rights of the Association to charge reasonable membership, admission, and other fees for the use of the Recreational Facilities, if any are constructed.

D. The Board of Directors of the Association shall have the power to place any reasonable restrictions upon the use of any roadways owned by the Association including, but not limited to, the maximum and minimum speeds of vehicles using said roads, maximum weight restrictions, all other necessary traffic and parking regulations, and the maximum noise levels of vehicles on the use of such roads shall be more restrictive than the laws of the state or any local government having jurisdiction over the Property shall not make such restrictions unreasonable. The right of ingress and egress through such roadways shall not be impaired.

E. The right of the Association to give, dedicate or sell all or any part of the Common Area, roadways, or other rights of way to any public agency, authority, or utility for such purposes and subject to such conditions as may be determined by the Association, provided that no such gift or sale or determination of such purposes or conditions shall be effective unless the same shall be authorized by the affirmative vote of three-fourths (3/4) of the votes cast by the Voting Members and the Declarant at a duly called meeting of the Members of the Association, and unless written notice of the meeting and of the proposed action thereunder is sent at least thirty (30) days prior to such meeting to every Member entitled hereunder to vote. A true copy of such resolution together with a certificate of the results of the vote taken thereon shall be made and acknowledged by the President or Vice-President and Secretary or Assistant Secretary of the Association and such certificate shall be annexed to any instrument of dedication or transfer affecting the said property, prior to the recording thereof. Such certificate shall be conclusive evidence of authorization by the Members.

F. Such reasonable Rules and Regulations for the use and enjoyment of the rights granted by the easements as may be promulgated by the Association from time to time.

Section 8. Further Restrictions. Nothing other than storm water may be discharged into any lake, canal, or other body of water located within or adjacent to the Property. Any permanent device through which water is drawn from any lake, canal, or other body of water onto or within any of the Property shall be subject to the prior written approval of the Architectural Review Committee as hereinafter established.

## ARTICLE VII

## ASSESSMENTS

Section 1. Creation of the Lien and Personal Obligations of Assessments. The Declarant covenants, and each Owner of any Family Dwelling Unit shall by acceptance of a deed therefor, regardless of whether or not it shall be so expressed in any such



EXHIBIT A

deed or other conveyance, be deemed to covenant and agree to all the terms and provisions of this Declaration and to pay to the Association: (1) annual assessments, (2) special assessments, and (3) individual assessments, all fixed, established and collected from time to time as hereinafter provided. The assessments will not be the same for all of the Property and will be different depending on whether the Unit is a Home or Townhome as hereinafter defined. Said assessments will only be required of an Owner including Declarant of a Family Dwelling Unit after a Certificate of Occupancy or its equivalent has been issued by the applicable governmental authority having jurisdiction thereof. No assessments will be due until such time as the Certificate of Occupancy has been issued. The annual, special and individual assessments, together with such interest thereon and costs of collection (including Reasonable Attorneys' Fees) therefor shall be a charge and continuing lien as provided herein on the real property and improvements thereon of the Owner against whom each such assessment is made. Each such assessment, together with such interest thereon and cost of collection (including reasonably Attorneys' Fees), shall also be the personal obligation of the person who was the Owner of such real property at the time when the assessments first became due and payable. The liability for assessments may not be avoided by waiver of the use or enjoyment of any Common Area or any Recreational Facility, or by the abandonment of the property against which the assessment was made. In the case of co-ownership of any Property subject to assessment, all of such co-Owners shall be jointly and severally liable for the entire amount of the assessment.

Section 2. Purpose of Annual Assessments. The annual assessments levied by the Association shall be used exclusively for the improvement, maintenance, enhancement, and operation of the property described in Article IV, Section 1 and to provide services which the Association is authorized or required to provide. The Association may establish reserve funds to be held in reserve in an interest bearing account or investments as a reserve for (a) major rehabilitation or major repairs, and (b) for emergency and other repairs required as a result of storm, fire, natural disaster, or other casualty loss. The amount of annual assessment will vary as to the type of Family Dwelling Unit on a Residential Lot as determined by the Board of Directors of the Association.

Section 3. Initial Period. There shall be no annual or special assessments prior to August 31, 2005, or until a date determined by the Board of Directors, whichever is later. The Board of Directors shall give notice of the initial budget and commencement of assessments at least 30 days before the first quarterly installment becomes due.

After the date established in the immediately preceding sentence, annual assessments shall be levied and determined in accordance with Sections 4 and 5 of this Article VII.

Section 4. Annual Budget of General Expenses. The Association shall prepare an annual budget not less than thirty (30) days in advance of the commencement of each fiscal year which shall project the estimated total expenditures for the services set forth in Section 2 above for the forthcoming year. Recreational Expenses may only be included in the budget to the extent they relate to Recreational Facilities owned and/or leased by the Association and open to all Owners. No Recreational Expenses relating to any Recreational Facility operated on a Membership Basis shall be contained in the budget; provided, however, that nothing contained herein shall prohibit the Association from charging a reasonable fee for the use of any Recreational Facility or from permitting the general public to use same upon payment of such a fee if it is deemed in the best interest of Mandarin Lakes Neighborhood. The Association shall, at the same time as it prepares the annual budget, prepare a schedule which sets forth the amount of the annual assessment for each Owner.

Section 5. Date of Commencement of Annual Assessments. Due Dates. The annual assessments provided for herein shall commence as to a Residential Lot on the first day of the month following the earliest of the following events to occur: a) a Certificate of Occupancy being issued for a Family Dwelling Unit constructed on a Residential Lot; or b) the occupancy by an Owner of a Family Dwelling Unit on a Residential Lot; or c) the conveyance by the Declarant of a Residential Lot; provided,

Residential Lot; or c) the conveyance by the Declarant of a Residential Lot; provided, however, that notwithstanding anything to the contrary contained above, the Owner of a Residential Lot shall pay 1/50th of the annual assessment as to a Residential Lot until a Certificate of Occupancy is issued for the Family Dwelling Unit constructed on the Residential Lot or until the Family Dwelling Unit is occupied by an Owner, whichever first occurs. The first annual assessment shall be adjusted according to the number of months remaining in the calendar year.

Section 6. Purpose of Special Assessments. To the extent that annual assessments are insufficient to fund the services which the Association is authorized or required to provide or to repair or reconstruct Common Area or as is otherwise permitted in this Declaration, the Association may levy a special assessment to cover the cost thereof.

Section 7. Proportion and Amount of Special Assessments. The total amount of special assessments, in any one year, may not exceed a sum equal to the amount of annual assessment for such year, except in the case of emergency and other repairs required as a result of storm, fire, natural disaster, or other casualty loss. This provision shall be interpreted to mean that the Association may make in any one year an annual assessment as set forth in Section 5 of this Article plus an additional special assessment, which additional assessment being considered alone, may not exceed the annual assessment.

Section 8. Individual Assessments. Each Owner of a Family Dwelling Unit is required to maintain his property, whether improved or unimproved, in a state of good repair at all times, which shall include, but shall not be limited to, periodic painting (or other appropriate refinishing) of all structures requiring same and the maintenance of the lawns, shrubbery and trees in a well-groomed and trim condition, and if unimproved, in an orderly and uncluttered condition. Such Owners are further required to maintain their property in accordance with any other covenants, conditions and restrictions and Supplement Declarations to which their deeds or other instruments of conveyance make reference. In the event of the failure of such Owner(s) to maintain their property as required herein, the Association, after first given thirty (30) days notice to such Owners and an opportunity to appear before the Board of Directors of the Association, may take such steps as are necessary to remedy any defective and/or unsightly conditions or comply with requirements imposed herein, and such Owner(s) of said property shall be assessed for the expense of same. Entry upon such Owner's Property for such purpose shall not constitute trespass. Assessments may also be levied against such Owners for any damage to Common Area, or Recreational Facilities which may be caused by such Owners, their families, lessees, guests or invitees.

Section 9. Quarterly Payment of Annual Assessments. Annual assessments shall be paid in advance in quarterly installments due on the first day of each calendar quarter or as otherwise established by the Association commencing with the date stated in Section 3 of this Article, and shall be deemed delinquent if not received by the Association on or before the tenth date after they become due. The due date and grace period of any special assessment under Section 6 hereof shall be fixed in the resolution authorizing such assessment.

Section 10. Duties of the Board of Directors. The Board of Directors of the Association shall prepare an annual budget and fix the amount of the assessment against each of the properties as provided hereinabove for each assessment period and shall, at that time, prepare a roster of the properties, and assessments applicable thereto which shall be kept in the office of the Association and shall be open to inspection by any Owner. Written notice of the assessment shall thereupon be sent every Owner. The Association shall upon demand at any time furnish to any or Owner who pays assessments directly a certificate in writing signed by an officer of the Association, setting forth whether said assessment has been paid. Such certificate shall be conclusive evidence of payment of any assessment therein stated to have been paid. The Association may charge a reasonable fee for this certificate.

Section 11. Effect of Non-Payment of Assessment Lien. If any assessment is not paid on or before the past-due date specified in Section 9 of this Article VII, then such assessment shall become delinquent and shall, together with interest thereon at the maximum rate allowed under law from the due date, any late charges and the cost of collection (including reasonable attorneys' fees) thereof as hereinafter provided, thereupon become a charge and continuing lien on the land and all improvements thereon as provided below, against which each such assessment is made. The Board of Directors shall have the authority to waive(either on a case by case basis or prospectively) small amounts of interest which may become due under this section in order to save bookkeeping costs if the Board finds it in the best interest of the Association to do so. Assessments shall be personal obligations against the following:

A. Each Owner shall be personally liable for all assessments made against his/her property, which liability will survive even after he/she has transferred title to the property subject to the assessment. Each person acquiring such property shall become personally liable for all unpaid assessments against such property.

The lands and improvements which are subject to lien for delinquent assessments are:

B. The lands and improvements subject to any assessment are subject to lien for delinquent assessments made against such lands and improvements.

C. The individual properties belonging to any Owner shall be subject to lien for failure to pay any individual assessments against such properties.

Said liens shall be evidenced by a claim of lien filed among the Public Records of Miami-Dade County, Florida, and shall be effective from and as of the time of recording; such lien shall be superior to all other liens save and except real property tax liens and the liens of any Institutional Lenders mortgage.

Section 12. Remedies. If any assessment is not paid prior to becoming delinquent or the expiration or any applicable grace period, or within thirty (30) days, if there is no applicable grace period or delinquency date, the Association may bring an action at law against any person personally obligated to pay the same or an action in equity to foreclose the lien against the subject property, which foreclosure shall be prosecuted as is provided by law in cases of mortgage foreclosures. The Association may bid at any sale held pursuant to such a foreclosure and apply as a cash credit against its bid all sums due the Association covered by the lien being enforced. The Board of Directors may settle and compromise said lien if it is in the best interests of the Association. In any civil action brought hereunder, the Association shall be entitled to judgment for interest, costs, and reasonable attorneys' fees as provided in this Declaration if it is the prevailing party.

Section 13. Subordination of the Lien to Mortgages. Where a person obtains title to property as result of foreclosure of a first mortgage or where the holder of a Institutional Lender's first mortgage accepts a deed in lieu of foreclosure of its first mortgage of record, such acquire of title and his heirs, successors or assigns, shall not be liable for the lien of any assessment pertaining to the property so acquired which became due prior to the acquisition of title as a result of foreclosure or the acceptance of such deed in lieu of foreclosure, and said property shall be free of any lien for such assessment, provided, however, that the extinguishment of the lien against the property for such assessments provided herein shall not relieve the original Owner from his personal liability to the Association for such unpaid assessments. Any assessment not collected because of the foregoing provisions or otherwise found by the Board of Directors to be uncollectible shall be collectible as additional common expenses from all Members subject to the same type of assessment.

Section 14. Exempt Property. The following property and persons shall be exempted from assessments under this Declaration and liens therefor:

A. Any portion of the Property used exclusively for the purpose of utility easements or dedicated public roadways; and

B. All Common Area.

Section 15. Capital Contributions. At the time of the closing of a Family Dwelling Unit pursuant to an original sale by the Declarant, each purchaser shall pay to the Declarant on behalf of the Association a sum equal to the aggregate of Two Hundred Fifty and No/100 ($250.00) Dollars as the amount of working capital contribution. These monies (hereinafter called "**Capital Contribution**" shall be the Association's property, and shall be held by the Association through its Board of Directors, pursuant to the powers described in the Articles and By-Laws. The Capital Contribution shall be deemed ordinary association income and need not be separated from or held or applied differently than assessments.

Section 16. Surface Water Management System. The Association is responsible for assessing and collecting fees for the operation, maintenance, and, if necessary, replacement of the surface water management system. Fees shall be assessed and collected through annual assessments or other assessment, if necessary.

Section 17. Declarant's Guarantee of Deficit. Notwithstanding any provision that may be contained to the contrary in this Declaration, for as long as Declarant is the owner of any Lot and there is a Class B Membership, the Declarant shall not be liable for assessment against such Residential Lot, provided that the Declarant funds any deficit in operating expenses, exclusive of reserves, cost of capital improvements and non-budgeted repairs or replacement and management fees (if the Declarant is entitled to same). For the purposes hereof, a deficit shall be computed by subtraction from said expenses (exclusive of the items described in the foregoing sentence) all assessments, contributions and other sums received or receivable by the Association. The Declarant may commence such assessments to Residential Lot(s) that it owns and thereby automatically terminate its obligations to fund a deficit in the operating expenses of the Association, or any time or from time to time elect again to fund deficits as aforesaid. When all Residential Lots within the Property are sold and conveyed to purchasers, the Declarant shall have no further liability of any kind to the Association for the payment of assessments or deficits other than those that arose to prior to such time.

## ARTICLE VIII

## ARCHITECTURAL AND DEVELOPMENT CONTROL

Section 1. Architectural Review Committee. There is hereby established an Architectural Review Committee ("ARC") whose duties, powers and responsibilities shall be as hereinafter set forth:

A. Initially, the ARC shall consist of three (3) persons designated by the Declarant, who shall hold office at the pleasure of the Declarant. The Declarant shall determine which member of the ARC shall serve as its chairman. At such time as the Class B Membership ends or earlier as Declarant may decide, the Declarant shall assign to the Association the rights, powers and duties and obligations of the ARC, whereupon the Board of Directors of the Association shall appoint the members of the ARC which shall consist of three (3) members, and shall provide for the terms of the members of the ARC, and determine which member of the ARC shall serve as its chairman.

B. The ARC shall have the right of specific approval or veto of all architectural and landscaping aspects of any improvements or development of individual units or buildings as well as the general plan for

DANIA S. FERNANDEZ & ASSOCIATES, P.A.

**CERTIFIED/RETURN RECEIPT and REGULAR MAIL**

December 15, 2015

To: James Turner
27401 SW 139th Place
Homestead, FL 33032

**RE: RECORDED AMENDED CLAIM OF LIEN AND INTENT TO FORECLOSE LIEN**
**Mandarin Lakes Neighborhood Association, Inc., a Florida not-for-profit corporation**
**Unit address: 27401 SW 139th Place, Homestead, FL 33032 (*the "Property"*)**

Dear Property Owner(s):

**As previously advised our office represents Mandarin Lakes Neighborhood Association, Inc., a Florida not-for-profit corporation (the "Association") as a creditor in this matter. We are attempting to collect a debt and all information obtained will be used for that purpose.**

This letter is to inform you a Claim of Lien has been filed against your property because you have not paid the Assessment to **Mandarin Lakes Neighborhood Association, Inc., a Florida not-for-profit corporation**. The Association intends to foreclose the lien and collect the unpaid amount within forty-five (45) days of this letter being provided to you.

You owe the interest accruing from (June/2013) to the present. As of the date of this letter, the total amount due with interest is $12,552.49. All costs of any action and interest from this day forward will also be charged to your account.

**All future correspondence, phone calls, and payments must be directed to our office.** Please make your funds payable to **"Dania S. Fernandez & Associates, P.A."**, and mailed to 10205 S. Dixie Highway, Suite 204, Pinecrest, Fl 33156.

Further, the Association is still willing to discuss the possibility of accepting a Deed in Lieu of Foreclosure. The Deed in Lieu of Foreclosure is a process where the owner transfers the real property to the Condominium to satisfy the default and terminate foreclosure proceedings. If you are unable to pay the full balance

If you have any questions regarding this matter you may reach us at (305) additional fees for this initial call.

THE BOARD OF DIRECTORS
**Mandarin Lakes Neighborhood Association, Inc., a Florida non-profit**

Sincerely yours,

Dania S. Fernandez, Esq.

Enc.: Recorded Claim of Lien.
Deed in Lieu

**NOTICE:** Pursuant to 15 U.S.C.S. § 1692 (g)(a) the attorney above is attempting to coll purpose. The above referenced Association is the creditor to whom the debt is owed. Unl notice dispute the validity of the debt or any portion thereof, the attorney will assume the deb day period that the debt, or any portion thereof, is disputed, the attorney shall obtain written verification of the debt and mail the same to you.

7013 2630 0000 0297 6794

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006 See Reverse for Instructions

EXHIBIT B

CERTIFIED MAIL™

DANIA S. FERNANDEZ & ASSOCIATES, P.A.

Dixie 102 Plaza
10205 South Dixie Highway, Suite 204
Pinecrest, Florida 33156

www.daniafernandez.com

7013 2630 0000 0297 6794

UNITED STATES POSTAGE
PITNEY BOWES
02 1P $006.48⁰
0001084977
MAILED FROM ZIP CODE 33156

James Turner
27401 SW 139 Place
Homestead, FL 33032

DANIA S. FERNANDEZ & ASSOCIATES, P.A.

Dixie 102 Plaza
10205 South Dixie Highway, Suite 204
Pinecrest, Florida 33156

www.daniafernandez.com

UNITED STATES POSTAGE
PITNEY BOWES
02 1P $000.48⁰
0001084977
MAILED FROM ZIP CODE 33156

James Turner
27401 SW 139 Place
Homestead, FL 33032

3085491

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

James Turner
27401 SW 139 Place
Homestead, FL 33032

9590 9401 0030 5168 8549 15

2. Article Number *(Transfer from service label)*

7013 2630 0000 0297 6794

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053 Domestic Return Receipt

CFN: 20150786426 BOOK 29887 PAGE 3278
DATE:12/14/2015 10:52:22 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**PREPARED BY:**
**RECORD & RETURN TO:**
Dania S. Fernandez, Esq.
Dania S. Fernandez & Associates, P.A.
10205 South Dixie Highway #204
Pinecrest, FL 33156
(305)254-4492

**AMEMDED CLAIM OF LIEN**

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

***THIS CLAIM OF LIEN IS BEING RE –RECORDED TO AMEND THE CLAIM OF LIEN FILED ON SEPTEMBER 25TH, 2015 IN OR BOOK 29792, PAGE 2713 OF THE PUBLIC RECORDS OF MIAMI –DADE COUNTY, FLORIDA.***

BEFORE ME, the undersigned notary public, personally appeared DANIA S. FERNANDEZ, ESQ., AGENT of **MANDARIN LAKES NEIGHBORHOOD HOMEOWNERS ASSOCIATION, INC., A FLORIDA NON-PROFIT CORPORATION.** Affiant took an oath, and is personally known to me that Affiant is Agent **MANDARIN LAKES NEIGHBORHOOD HOMEOWNERS ASSOCIATION, INC., A FLORIDA NON-PROFIT CORPORATION**, whose post office address is c/o **Renovations Property Management** 8000 NW 7th Street, Suite 204, Miami, Fl 33126, and that pursuant to Section 718.116 of the Florida Statutes as well as the Declaration of Condominium for **MANDARIN LAKES NEIGHBORHOOD HOMEOWNERS ASSOCIATION, INC., A FLORIDA NON-PROFIT CORPORATION**, said Association is owed the following amounts for shares of the common expenses:

**Total Amount Due: $10,683.77** **Attorney's Fees Due: $1,868.72**

In addition, this Claim of Lien also secures interest at the rate of 18% per annum from the due dates, late fees, costs, and reasonable attorney's fees incurred by the Association pursuant to the recorded Declaration of Condominium for **MANDARIN LAKES NEIGHBORHOOD HOMEOWNERS ASSOCIATION, INC**. Further, this lien secures all assessments coming due, less payments received from the date of the initial delinquency and after the filing of this Claim of Lien. The Lienor claims this lien on the following described property in **MIAMI-DADE** County, Florida:

Lot 10, Block 88, of Mandarin Lakes, according to the Plat thereof, as recorded in Plat Book 163, at Page 40, of the Public Records of Miami-Dade County, Florida.

**Property Address: 27401 SW 139th Place, Homestead, FL 33032**

The current owner of which is *James E. Turner Jr., A Single Man.*

The amount due to the Lienor remains outstanding as of this 11 day of December, 2015.

Witness: Elizabeth Ruiz

MANDARIN LAKES NEIGHBORHOOD HOMEOWNERS ASSOCIATION, INC., A FLORIDA NON-PROFIT CORPORATION

Witness: Jewelisa Perdomo

BY: ______________________ (Seal)
Meliz M. Martin, Esq., AGENT

Sworn to and subscribed before me this 11 day of December, 2015, by Meliz M. Martin, Esq., Agent, on behalf of the corporation, who is personally known or who has/have produced a driver's license as identification.

Notary Public --- State of Florida
Printed Name:Nelida Andrade

NOTARY PUBLIC STATE OF FLORIDA
NELIDA ANDRADE
MY COMMISSION # EE 191958
EXPIRES: April 23, 2016
Bonded Thru Budget Notary Services

EXHIBIT
C

EXHIBIT B

27401

# Mandarin Lakes Neighborhood HOA
## Breakdown of Fees

| Date | Master Monthly Maintenance | Total Amount Paid | Interest | Paid Interest | New Interest | Late Fees | Paid Late Fees | New Late Fee | Prior Atty Fees | Paid Atty Fees | New Atty Fee Total | Paid Assessments | Monthly Maintenance Balance | Running Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/11 | $123.60 | | 0.00000 | 0.00000 | 0.00000 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 | | $123.60 | $123.60 |
| 11/1/11 | $123.60 | | 1.85400 | 0.00000 | 1.85400 | $25.00 | $0.00 | $25.00 | | $0.00 | $0.00 | | $247.20 | $274.05 |
| 12/1/11 | $123.60 | | 3.70800 | 0.00000 | 5.56200 | $25.00 | $0.00 | $50.00 | | $0.00 | $0.00 | | $370.80 | $426.36 |
| 1/1/12 | $127.61 | | 5.56200 | 0.00000 | 11.12400 | $25.00. | $0.00 | $75.00 | | $0.00 | $0.00 | | $498.41 | $584.53 |
| 2/1/12 | $127.61 | | 7.47615 | 0.00000 | 18.60015 | $25.00 | $0.00 | $100.00 | | $0.00 | $0.00 | | $626.02 | $744.62 |
| 3/1/12 | $127.61 | | 9.39030 | 0.00000 | 27.99045 | $25.00 | $0.00 | $125.00 | | $0.00 | $0.00 | | $753.63 | $906.62 |
| 4/1/12 | $127.61 | | 11.30445 | 0.00000 | 39.29490 | $25.00 | $0.00 | $150.00 | | $0.00 | $0.00 | | $881.24 | $1,070.53 |
| 5/1/12 | $127.61 | | 13.21860 | 0.00000 | 52.51350 | $25.00 | $0.00 | $175.00 | | $0.00 | $0.00 | | $1,008.85 | $1,236.36 |
| 6/1/12 | $127.61 | | 15.13275 | 0.00000 | 67.64625 | $25.00 | $0.00 | $200.00 | | $0.00 | $0.00 | | $1,136.46 | $1,404.11 |
| 7/1/12 | $127.61 | | 17.04690 | 0.00000 | 84.69315 | $25.00 | $0.00 | $225.00 | | $0.00 | $0.00 | | $1,264.07 | $1,573.76 |
| 8/1/12 | $127.61 | | 18.96105 | 0.00000 | 103.65420 | $25.00 | $0.00 | $250.00 | | $0.00 | $0.00 | | $1,391.68 | $1,745.33 |
| 9/1/12 | $127.61 | | 20.87520 | 0.00000 | 124.52940 | $25.00 | $0.00 | $275.00 | | $0.00 | $0.00 | | $1,519.29 | $1,918.82 |
| 10/1/12 | $127.61 | | 22.78935 | 0.00000 | 147.31875 | $25.00 | $0.00 | $300.00 | | $0.00 | $0.00 | | $1,646.90 | $2,094.22 |
| 11/1/12 | $127.61 | | 24.70350 | 0.00000 | 172.02225 | $25.00 | $0.00 | $325.00 | | $0.00 | $0.00 | | $1,774.51 | $2,271.53 |
| 12/1/12 | $127.61 | | 26.61765 | 0.00000 | 198.63990 | $25.00 | $0.00 | $350.00 | | $0.00 | $0.00 | | $1,902.12 | $2,450.76 |
| 1/1/13 | $123.16 | | 28.53180 | 0.00000 | 227.17170 | $25.00 | $0.00 | $375.00 | | $0.00 | $0.00 | | $2,025.28 | $2,627.45 |
| 2/1/13 | $123.16 | | 30.37920 | 0.00000 | 257.55090 | $25.00 | $0.00 | $400.00 | | $0.00 | $0.00 | | $2,148.44 | $2,805.99 |
| 3/1/13 | $123.16 | | 32.22660 | 0.00000 | 289.77750 | $25.00 | $0.00 | $425.00 | | $0.00 | $0.00 | | $2,271.60 | $2,986.38 |
| 4/1/13 | $123.16 | | 34.07400 | 0.00000 | 323.85150 | $25.00 | $0.00 | $450.00 | | $0.00 | $0.00 | | $2,394.76 | $3,168.61 |
| 5/1/13 | $123.16 | | 35.92140 | 0.00000 | 359.77290 | $25.00 | $0.00 | $475.00 | | $0.00 | $0.00 | | $2,517.92 | $3,352.69 |
| 6/1/13 | $123.16 | | 37.76880 | 0.00000 | 397.54170 | $25.00 | $0.00 | $500.00 | | $0.00 | $0.00 | | $2,641.08 | $3,538.62 |
| 7/1/13 | $123.16 | | 39.61620 | 0.00000 | 437.15790 | $25.00 | $0.00 | $525.00 | | $0.00 | $0.00 | | $2,764.24 | $3,726.40 |
| 8/1/13 | $123.16 | | 41.46360 | 0.00000 | 478.62150 | $25.00 | $0.00 | $550.00 | | $0.00 | $0.00 | | $2,887.40 | $3,916.02 |
| 9/1/13 | $123.16 | | 43.31100 | 0.00000 | 521.93250 | $25.00 | $0.00 | $575.00 | | $0.00 | $0.00 | | $3,010.56 | $4,107.49 |
| 10/1/13 | $123.16 | | 45.15840 | 0.00000 | 567.09090 | $25.00 | $0.00 | $600.00 | | $0.00 | $0.00 | | $3,133.72 | $4,300.81 |
| 11/1/13 | $123.16 | | 47.00580 | 0.00000 | 614.09670 | $25.00 | $0.00 | $625.00 | | $0.00 | $0.00 | | $3,256.88 | $4,495.98 |
| 12/1/13 | $123.16 | | 48.85320 | 0.00000 | 662.94990 | $25.00 | $0.00 | $650.00 | | $0.00 | $0.00 | | $3,380.04 | $4,692.99 |
| 1/1/14 | $138.61 | | 50.70060 | 0.00000 | 713.65050 | $25.00 | $0.00 | $675.00 | | $0.00 | $0.00 | | $3,518.65 | $4,907.30 |
| 2/1/14 | $138.61 | | 52.77975 | 0.00000 | 766.43025 | $25.00 | $0.00 | $700.00 | | $0.00 | $0.00 | | $3,657.26 | $5,123.69 |
| 3/1/14 | $138.61 | | 54.85890 | 0.00000 | 821.28915 | $25.00 | $0.00 | $725.00 | | $0.00 | $0.00 | | $3,795.87 | $5,342.16 |
| 4/1/14 | $138.61 | | 56.93805 | 0.00000 | 878.22720 | $25.00 | $0.00 | $750.00 | | $0.00 | $0.00 | | $3,934.48 | $5,562.71 |
| 5/1/14 | $138.61 | | 59.01720 | 0.00000 | 937.24440 | $25.00 | $0.00 | $775.00 | | $0.00 | $0.00 | | $4,073.09 | $5,785.33 |
| 6/1/14 | $138.61 | | 61.09635 | 0.00000 | 998.34075 | $25.00 | $0.00 | $800.00 | | $0.00 | $0.00 | | $4,211.70 | $6,010.04 |
| 7/1/14 | $138.61 | | 63.17550 | 0.00000 | 1061.51625 | $25.00 | $0.00 | $825.00 | | $0.00 | $0.00 | | $4,350.31 | $6,236.83 |
| 8/1/14 | $138.61 | | 65.25465 | 0.00000 | 1126.77090 | $25.00 | $0.00 | $850.00 | | $0.00 | $0.00 | | $4,488.92 | $6,465.69 |
| 9/1/14 | $138.61 | | 67.33380 | 0.00000 | 1194.10470 | $25.00 | $0.00 | $875.00 | | $0.00 | $0.00 | | $4,627.53 | $6,696.63 |
| 10/1/14 | $138.61 | | 69.41295 | 0.00000 | 1263.51765 | $25.00 | $0.00 | $900.00 | | $0.00 | $0.00 | | $4,766.14 | $6,929.66 |
| 11/1/14 | $138.61 | | 71.49210 | 0.00000 | 1335.00975 | $25.00 | $0.00 | $925.00 | | $0.00 | $0.00 | | $4,904.75 | $7,164.76 |
| 12/1/14 | $138.61 | | 73.57125 | 0.00000 | 1408.58100 | $25.00 | $0.00 | $950.00 | | $0.00 | $0.00 | | $5,043.36 | $7,401.94 |
| 1/1/15 | $142.00 | | 75.65040 | 0.00000 | 1484.23140 | | $0.00 | $950.00 | | $0.00 | $0.00 | | $5,185.36 | $7,619.59 |
| 2/1/15 | $142.00 | | 77.78040 | 0.00000 | 1562.01180 | | $0.00 | $950.00 | | $0.00 | $0.00 | | $5,327.36 | $7,839.37 |
| 3/1/15 | $142.00 | | 79.91040 | 0.00000 | 1641.92220 | | $0.00 | $950.00 | | $0.00 | $0.00 | | $5,469.36 | $8,061.28 |
| 4/1/15 | $142.00 | | 82.04040 | 0.00000 | 1723.96260 | $25.00 | $0.00 | $975.00 | | $0.00 | $0.00 | | $5,611.36 | $8,310.32 |
| 5/1/15 | $142.00 | | 84.17040 | 0.00000 | 1808.13300 | $25.00 | $0.00 | $1,000.00 | | $0.00 | $0.00 | | $5,753.36 | $8,561.49 |

27401 SW 139 Place
James Turner

# Mandarin Lakes Neighborhood HOA
## Breakdown of Fees

| Date | Master Monthly Maintenance | Total Amount Paid | Interest | Paid Interest | New Interest | Late Fees | Paid Late Fees | New Late Fee | Prior Atty Fees | Paid Atty Fees | New Atty Fee Total | Paid Assessments | Monthly Maintenance Balance | Running Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/15 | $142.00 | | 86.30040 | 0.00000 | 1894.43340 | $25.00 | $0.00 | $1,025.00 | | $0.00 | $0.00 | | $5,895.36 | $8,814.79 |
| 7/1/15 | $142.00 | $8,183.46 | 88.43040 | 1894.43340 | 88.43040 | $25.00 | $1,025.00 | $25.00 | | $0.00 | $0.00 | $5,264.03 | $773.33 | $886.76 |
| 8/1/15 | $142.00 | | 11.60000 | 0.00000 | 100.03040 | $25.00 | $0.00 | $50.00 | | $0.00 | $0.00 | | $915.33 | $1,065.36 |
| 9/1/15 | $142.00 | | 13.73000 | 0.00000 | 113.76040 | $25.00 | $0.00 | $75.00 | | $0.00 | $0.00 | | $1,057.33 | $1,246.09 |
| 10/1/15 | $142.00 | | 15.86000 | 0.00000 | 129.62040 | $25.00 | $0.00 | $100.00 | | $0.00 | $0.00 | | $1,199.33 | $1,428.95 |
| 11/1/15 | $142.00 | | 17.99000 | 0.00000 | 147.61040 | $25.00 | $0.00 | $125.00 | | $0.00 | $0.00 | | $1,341.33 | $1,613.94 |
| 12/1/15 | $142.00 | | 20.12000 | 0.00000 | 167.73041 | $25.00 | $0.00 | $150.00 | | $0.00 | $0.00 | | $1,483.33 | $1,801.06 |
| 1/1/16 | $128.79 | | 22.25000 | 0.00000 | 189.98041 | | $0.00 | $150.00 | | $0.00 | $0.00 | | $1,612.12 | $1,952.10 |
| 2/1/16 | $128.79 | | 24.18185 | 0.00000 | 214.16226 | $25.00 | $0.00 | $175.00 | | $0.00 | $0.00 | | $1,740.91 | $2,130.08 |
| 3/1/16 | $128.79 | | 26.11370 | 0.00000 | 240.27596 | $25.00 | $0.00 | $200.00 | | $0.00 | $0.00 | | $1,869.70 | $2,309.98 |
| 4/1/16 | $128.79 | | 28.04555 | 0.00000 | 268.32151 | $25.00 | $0.00 | $225.00 | | $0.00 | $0.00 | | $1,998.49 | $2,491.81 |
| 5/1/16 | $128.79 | | 29.97740 | 0.00000 | 298.29891 | $25.00 | $0.00 | $250.00 | | $0.00 | $0.00 | | $2,127.28 | $2,675.58 |
| 6/1/16 | $128.79 | | 31.90925 | 0.00000 | 330.20816 | $25.00 | $0.00 | $275.00 | | $0.00 | $0.00 | | $2,256.07 | $2,861.28 |
| 7/1/16 | $128.79 | | 33.84110 | 0.00000 | 364.04926 | $25.00 | $0.00 | $300.00 | | $0.00 | $0.00 | | $2,384.86 | $3,048.91 |
| 8/1/16 | $128.79 | | 35.77295 | 0.00000 | 399.82221 | $25.00 | $0.00 | $325.00 | | $0.00 | $0.00 | | $2,513.65 | $3,238.48 |
| 9/1/16 | $128.79 | | 37.70480 | 0.00000 | 437.52701 | $25.00 | $0.00 | $350.00 | | $0.00 | $0.00 | | $2,642.44 | $3,429.97 |
| 10/1/16 | $128.79 | | 39.63665 | 0.00000 | 477.16366 | $25.00 | $0.00 | $375.00 | | $0.00 | $0.00 | | $2,771.23 | $3,623.40 |
| 11/1/16 | $128.79 | | 41.56850 | 0.00000 | 518.73217 | $25.00 | $0.00 | $400.00 | | $0.00 | $0.00 | | $2,900.02 | $3,818.76 |
| 12/1/16 | $128.79 | | 43.50035 | 0.00000 | 562.23252 | $25.00 | $0.00 | $425.00 | | $0.00 | $0.00 | | $3,028.81 | $4,016.05 |
| 1/1/17 | $128.79 | | 45.43220 | 0.00000 | 607.66472 | $25.00 | $0.00 | $450.00 | | $0.00 | $0.00 | | $3,157.60 | $4,215.27 |
| 2/1/17 | $128.79 | | 47.36405 | 0.00000 | 655.02877 | $25.00 | $0.00 | $475.00 | | $0.00 | $0.00 | | $3,286.39 | $4,416.42 |
| | $8,550.42 | -$8,183.46 | $2,549.46 | -$1,894.43 | | $1,500.00 | $1,025.00 | | $0.00 | $0.00 | | -$5,264.03 | | |

| | | | | |
|---|---|---|---|---|
| Maintenance Due | $8,550.42 | Payment towards Maintenance | -$5,264.03 | $3,286.39 |
| Interest | $2,549.46 | Payment towards Interest | -$1,894.43 | $655.03 |
| Late fees | $1,500.00 | Payment towards Late Fees | $1,025.00 | $2,525.00 |
| Prior Attorney Fees | $0.00 | Payment towards Late Fees | $0.00 | $0.00 |
| Paid by Owner | -$8,183.46 | | | |
| Total Amount Due | $4,416.42 | | | |

| | |
|---|---|
| Master Amount Due | $2,414.93 |
| Neighborhood Amt Due | $4,416.42 |
| | **$6,831.36** |

2/13/2017